## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

BLUE CROSS AND BLUE SHIELD
ASSOCIATION,

    Plaintiff,

UNITEDHEALTH GROUP,
INCORPORATED and HEALTH PLAN
OF NEVADA, INC.,

    Defendants.

CASE NO.

**PLAINTIFF BLUE CROSS AND BLUE
SHIELD ASSOCIATION'S
COMPLAINT FOR DECLARATORY
RELIEF**

Plaintiff BLUE CROSS AND BLUE SHIELD ASSOCIATION ("Plaintiff" or

"BCBSA"), an Illinois not-for-profit membership-based corporation, complains as

follows against Defendants UNITEDHEALTH GROUP, INCORPORATED

("UnitedHealth") and HEALTH PLAN OF NEVADA, INC. ("Health Plan of Nevada")

(each individually, a "Defendant," and collectively, "Defendants"), and seeks a

declaratory judgment that the use of the term "HPN" by Plaintiff (and its licensees) as

short for "high-performance network," including as part of Plaintiff's own marks such as

BLUE HPN, does not infringe or otherwise violate Defendants' alleged trademark rights

in the term "HPN," used as short for "Health Plan of Nevada" and used to designate

services offered by Health Plan of Nevada.

### JURISDICTION AND VENUE

  1.  This Court has subject matter jurisdiction over the claims in this action

under 28 U.S.C. § 1338(a) (Acts of Congress relating to trademarks), 15 U.S.C. § 1121 (Lanham Act § 39), 28 U.S.C. § 2201 (Declaratory Judgment Act), and federal question jurisdiction pursuant to 28 U.S.C. § 1331. To the extent applicable, this Court would also have jurisdiction over common-law and state-law claims under 28 U.S.C. § 1338(b) (unfair competition joined with a substantial and related claim under trademark law) and § 1367(a) (supplemental jurisdiction).

2.      Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) and (c). Among other things, Defendant UnitedHealth resides within this District, and a substantial part of the events or omissions giving rises to the claims herein alleged occurred within this District.

3.      An actual case or controversy has arisen between the parties. Defendants have repeatedly asserted that BCBSA's use of terms and marks described herein constitute trademark infringement—and has demanded that BCBSA cease such use on a nationwide basis and withdraw associated applications for federal registration.

## THE PARTIES

4.      Plaintiff Blue Cross and Blue Shield Association ("BCBSA") is a not-for-profit membership-based corporation organized and existing under the laws of the State of Illinois, having its corporate offices at 225 North Michigan Avenue, Chicago, IL 60601-7680.

5.      On information and belief, Defendant UnitedHealth is a corporation organized and existing under the laws of the State of Delaware, having its corporate headquarters in Minnetonka, Minnesota.

6.      Defendant Health Plan of Nevada is a corporation organized and existing under the laws of the State of Nevada, having its corporate headquarters in Las Vegas, Nevada. On information and belief, Health Plan of Nevada is doing business in Minnesota and engages in regular communication with individuals in Minnesota, including without limitation as a subsidiary of UnitedHealth and a licensee of UnitedHealth regarding the marks at issue in this action.

## FACTUAL BACKGROUND

*Plaintiff BCBSA's Famous Blue Marks and the Blue HPN Marks*

7.      Headquartered in Chicago, Illinois, BCBSA is a national association of 36 independent, community-based and locally operated BLUE CROSS and BLUE SHIELD companies (the "BCBS Member Plans"), including Blue Cross and Blue Shield of Minnesota in this District. BCBSA represents the nation's oldest and largest family of health benefits companies. For over 80 years, BCBSA (including through its predecessors in interest and its Member Plans and licensees) has provided tens of millions of families with top-quality affordable health care plans. The BCBS Member Plans currently provide health care plans for over 100 million people in the United States—or about 1 in 3 Americans—and offer health care plans in all 50 states, the District of Columbia, and in Puerto Rico. More than 90% of hospitals and physicians in the United States contract with the BCBS Member Plans—more than any other insurer. The BCBS Member Plans currently provide health care plans to approximately 75% of the Fortune 500 companies and approximately 80% of the Fortune 100 companies.

8.      The BLUE CROSS and BLUE SHIELD brands are among the most recognized in the insurance, health and related industries in the United States—and, indeed, in any industry. BCBSA is the owner of the BLUE CROSS word and design marks, the BLUE SHIELD word and design marks, and other marks consisting of the image of a blue cross or the image of a blue shield (or both). It licenses the use of various such marks to its BCBS Member Plans and other licensees for the provision of a wide variety of goods and services, including but not limited to healthcare, health insurance, life insurance, dental insurance, vision insurance, disability insurance, long-term care insurance, workers' compensation insurance, health care delivery services, wellness services, health education, and other related goods and services. BCBSA (including through its predecessors in interest and its BCBS Member Plans and licensees) has been using these trademarks and service marks since at least as early as 1934 (BLUE CROSS) and 1939 (BLUE SHIELD).

9.      In the United States alone, BCBSA currently owns over 200 valid and subsisting U.S. federal trademark and service mark registrations. Many of its U.S. federal registrations have become incontestable under Section 15 of the Lanham Act. Additionally, BCBSA owns similar trademark and service mark registrations in more than 170 countries throughout the world. All of these (along with thousands of trade names and common-law marks) form a "family" of BLUE trade names, trademarks, and service marks ("Blue Marks").

10.     The term "high-performance network" is an established term used in the healthcare industry to refer to provider networks that are structured to provide benefits

such as efficiency and lower cost. Health plans are increasingly making use of high-performance networks, and much has been written about high-performance networks, including by insurance companies, industry analysts, and industry organizations. The term "HPN" is a recognized abbreviation for "high-performance network," and for example, "HPN" appears as such in online acronym listings and online acronym finders.

11.     BCBSA, including through its BCBS Member Plans and licensees, is in the process of launching the Blue High Performance Network, its new national high-performance network built to deliver and continually influence high quality care, better care delivery, and lower total cost (the "Blue HPN Services"). BCBSA and its BCBS Member Plans are using and planning to use the terms "high-performance network" and "HPN" (as an abbreviation for "high-performance network") to describe or discuss the Blue HPN Services or high-performance network services in general.

12.     BCBSA has applied to register branded variations of "high performance network" and "HPN," namely the BLUE HPN mark (U.S. Serial No. 88/485,853), the HPN & Suitcase Design mark (U.S. Serial No. 88/286,385), the BLUE HIGH-PERFORMANCE NETWORK mark (U.S. Serial No. 88/485,870), and the BLUE HIGH PERFORMANCE NETWORK mark (U.S. Serial No. 88/485,861) (collectively, the "Blue HPN Marks"). Notably, as merely-descriptive terms, the U.S. Patent & Trademark Office required BCBSA to disclaim—and BCBSA did disclaim—"HPN" and "high performance network" from the respective applications. Attached as Exhibit A are true and correct copies of the trademark records for the Blue HPN Marks from the U.S. Patent and Trademark Office database.

13.     BCBSA and its BCBS Member Plans are using and planning to use the Blue HPN Marks in connection with the Blue HPN Services. At least as early as November 2019, BCBSA announced publicly that it was launching its own high-performance network that it would be calling "Blue High Performance Network" (abbreviated as "Blue HPN"); BCBSA is already in the market with that name and the Blue HPN marks and, for example, has a page on its website dedicated to its "Blue High Performance Network"; and BCBSA has made substantial preparations of materials using the Blue HPN marks, including designs and mock-ups with the Blue HPN Marks and communications with its BCBS Member Plans regarding use of the Blue HPN Marks.

14.     As with many of the marks that BCBSA licenses for use by its BCBS Member Plans, BCBSA has established rules and guidelines regarding use of the Blue HPN Marks. Blue HPN is and will be used as an appropriate abbreviation and in proximity to the fully spelled out version – Blue High Performance Network. Below is a representative example:



15.     In addition, when used by a BCBS Member Plan or licensee, any public communication identifies or will identify the responsible licensee by its trade or legal

name. Below is a representative example from one of the BCBS Member Plans:



16.      The HPN & Suitcase Design Mark has a more limited use than the other

Blue HPN Marks, and is only used in a post-sale environment with existing members and

providers on member identification cards and for claims processing. Similar to the other

Blue HPN Marks, as shown in the example identification card below, the HPN &

Suitcase Design Mark appears with "Blue High Performance Network" spelled out on the

card, along with the name of the relevant BCBS Member Plan prominently featured in

the upper left hand corner:



17.      The member identification card for Blue HPN follows the standard format

for other BCBS Member Plan cards, including cards that use a different designation

within the suitcase design, such as "PPO," as shown below:



18.     Accordingly, consumers will understand that the Blue HPN Marks refer to the Blue High Performance Network and will understand that specific BCBS Member Plans and licensees are the sources of the Blue HPN Services.

*Defendants' Use of "HPN" and Allegations of Trademark Infringement*

19.     Defendant UnitedHealth claims rights in and has sought to register the mark HPN, which, on information and belief, is licensed to Health Plan of Nevada. On December 27, 2019, UnitedHealth filed a trademark application (U.S. Serial No. 88/740,553) seeking to register the mark HPN for "organizing and administering networks of health care providers and health care specialists" in Class 35, "Organization, management and administration of managed care benefit plans, health care insurance plans, prescription drug plans, health benefits accounts and prepaid healthcare plans; Administration of employee health benefit plans, vision care and dental health plans; Organization and administration of networks of preferred health care providers; Providing health care plan information on insurance matters in the fields of health insurance, health care benefit plans and pharmacy benefits" in Class 36, and "Healthcare in the nature of health maintenance organizations and preferred provider organizations; Health care in the nature of health care benefit plans and health care service plans" in

Class 44. In filing this application, UnitedHealth asserts that it has nationwide exclusive

rights in the mark HPN in connection with the listed services.

20.     On information and belief, UnitedHealth's claimed rights in the mark HPN

are based on the use of the mark by Health Plan of Nevada. The specimen of use

submitted with UnitedHealth's application is the Health Plan of Nevada Member Guide,

excerpts of which are shown below:



21.     On or around January 6, 2020, Defendants' outside law firm sent a letter to

Plaintiff indicating that it represented "Health Plan of Nevada, Inc. and other

UnitedHealth Group companies." Among other things, the letter stated that Health Plan

of Nevada "has long used the service mark HPN[SM] to signify the source of its health

plans"; asserted that "consumer confusion is certain to arise" if BCBSA goes forward

with its use of the Blue HPN Marks; and asked BCBSA to "promptly confirm" both that

it had "withdrawn the applications in question" and that "if it proceeds with its intended

offerings, it will do so under a different mark."

22.     The parties' in-house counsel spoke by phone on or around January 22,

2020 to discuss the dispute. In the call, BCBSA explained why there was no likelihood of

consumer confusion, and on January 27, 2020, BCBSA sent a letter to Defendants to

recap and follow up on the conversation. In the call and its letter, BCBSA explained that

there is no likelihood of confusion with its use of the Blue HPN Marks because "HPN"

(as short for high-performance network) and "High-Performance Network" are

descriptive terms in the industry, as evidenced by dictionary definitions, acronym listings,

and use in the industry; "HPN" is not associated with a single meaning or source, as

evidenced by public third-party uses of the term to refer to other phrases or as

abbreviations of other names; and the parties' respective uses dispel any potential for

confusion. BCBSA also noted that Health Plan of Nevada's most prominent consumer-

facing branding is not "HPN"—it is the full, written out name, "Health Plan of Nevada"

and is often accompanied by its stylized graphic logo, as shown below:



BCBSA further explained that, by contrast, the Blue HPN Marks would be used with the

full phrase "high-performance network" written out before and in conjunction with use of

the acronym, and that its branded use of "HPN" is in combination with marks in which

BCBSA has longstanding rights, including the BLUE word mark, as well as BCBSA's

famous BLUE CROSS and BLUE SHIELD word and design marks.

23.     UnitedHealth indicated that it wanted to have its outside law firm handle

the next call, and in another effort to discuss the dispute, BCBSA's in-house counsel

spoke with Defendants' outside law firm by phone on or around March 3, 2020. In the

call, Defendants' counsel stated that he is a litigator and—despite BCBSA's detailed

explanation of the two parties' non-confusing uses—that BCBSA had not resolved their

concerns.

24.     After that call, on March 16, 2020, BCBSA sent a second letter to

Defendants explaining again that "there is no chance of confusion" with the parties'

respective marks. BCBSA elaborated on its plan for implementation and its rules

regarding licensee use, including by providing representative samples of the Blue HPN

Marks, which show the acronym used in connection with "high performance network"

spelled out, and with BCBSA's famous Blue Marks. BCBSA also explained that all

public communications must identify the name of the BCBS Member Plan or licensee

that is the source of the Blue HPN Services.

25.     Despite BCBSA's detailed explanation of its current and intended use of

HPN and the Blue HPN Marks, on April 10, 2020, Defendants' outside law firm sent a

second letter affirming "we will need to agree to disagree about whether confusion would

be likely to arise from BCBS's use of HPN and/or BLUE HPN in connection with

BCBS's intended insurance and related services. Nothing in your letter has altered my

client's conclusion that confusion is likely to arise." The letter states that an acceptable

resolution "that avoids violating [Defendants'] rights" would be if BCBSA agreed to

discontinue use of HPN and BLUE HPN, and expressly abandon its related applications

for federal registration.

26.     Defendant UnitedHealth has filed extensions of time to oppose all four of

BCBSA's applications for federal registration of the Blue HPN Marks before the

Trademark Trial and Appeal Board. These block the progress of BCBSA's applications

for the period of extension.

27.     In short, after some three months of discussion, and after BCBSA provided

detailed information regarding its use of HPN and the Blue HPN Marks, Defendants

stated they had no change in view that "confusion is likely to arise" and persisted in the

demand that BCBSA cease any use of HPN or BLUE HPN on a nationwide basis—and

withdraw its associated applications for federal registration of marks using HPN or

BLUE HPN. Under the totality of the circumstances, BCBSA has reasonable

apprehension of facing litigation from Defendants regarding BCBSA's use of HPN and

BLUE HPN, and use and applications to register the BLUE HPN Marks; and coupled

with BCBSA's considerable preparations and work regarding the Blue HPN Services and

materials using HPN and the Blue HPN Marks, there is a sufficient actual controversy

under the Declaratory Judgment Act.

## COUNT I
### Declaratory Judgment of Non-Infringement and
### Non-Violation of Trademark Rights

28.     Plaintiff Blue Cross and Blue Shield Association restates and re-avers the

allegations of Paragraphs 1 through 27, inclusive, as if set forth here in full as part of this

claim for relief.

29.     Defendants claim that BCBSA's use of the Blue HPN Marks is likely to cause confusion or otherwise cause harm, thereby constituting trademark infringement or other violation of trademark rights; and Defendants demand that BCBSA stop its use of the Blue HPN Marks and abandon its pending applications for federal registration of such marks.

30.     An actual, present, and justiciable controversy has arisen between BCBSA and Defendants concerning BCBSA's above-described use of HPN and BLUE HPN and use or registration of the Blue HPN Marks.

31.     Plaintiff's Blue HPN Marks are or will be used in such a manner that there is no infringement or other violation of Defendants' alleged trademark rights in connection with the term HPN.

32.     BCBSA seeks a declaratory judgment from this Court that the Blue HPN Marks are not likely to cause confusion as to the source, affiliation, or sponsorship of the Blue HPN Services with the services of Defendants and do not otherwise violate any of Defendants' claimed trademark rights.

33.     BCBSA seeks declaratory judgment from this Court that its use and registration of the Blue HPN Marks do not constitute trademark infringement or other alleged unfair competition or violation of trademark rights under the Lanham Act or under any applicable statutory or common law.

34.     BCBSA seeks declaratory judgment that Defendants have suffered no, and will not suffer any, damages or loss of goodwill as a result of BCBSA's above-described use of HPN or BLUE HPN or use or registration of the Blue HPN Marks.

35.     BCBSA seeks a declaratory judgment that Defendants are not entitled to any injunctive relief or damages under the Lanham Act or under any applicable statutory or common law.

## DEMAND FOR JURY TRIAL

Plaintiff Blue Cross and Blue Shield Association hereby demands a trial by jury on all issues triable by a jury.

## PRAYER FOR RELIEF

Plaintiff Blue Cross and Blue Shield Association prays as follows against Defendants UnitedHealth and Health Plan of Nevada (and each of them):

1.     For a judgment declaring that BCBSA's use of HPN and BLUE HPN and use and registration of the Blue HPN Marks do not constitute trademark infringement, unfair competition, or any other violation of trademark rights of Defendants, or any of them, under the Lanham Act or under any applicable statutory or common law;

2.     For a judgment declaring that Defendants are not entitled to any injunctive relief with respect to BCBSA's use of HPN or the Blue HPN Marks;

3.     For a judgment declaring that Defendants have not suffered and will not suffer any harm or damages, and thus are not entitled to any relief under the Lanham Act or any applicable statutory law or common law;

4.     For its costs and its attorneys' fees as may be allowed by law; and

5.     For such other and further relief as the Court may deem just and proper.

Dated:  April 28, 2020

s/Alan G. Carlson
Alan G. Carlson (MN Bar No. 14801)
J. Derek Vandenburgh (MN Bar No. 224145)
Nathan D. Louwagie (MN Bar No. 397564)
Carlson, Caspers, Vandenburgh, &
Lindquist, P.A.
225 S. Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
acarlson@carlsoncaspers.com
dvandenburgh@carlsoncaspers.com
nlouwagie@carlsoncaspers.com

OF COUNSEL:

*(pro hac vice applications forthcoming)*
Garner K. Weng
Janie L. Thompson
Noel M. Cook
Neema S. Ghiasi
HANSON BRIDGETT LLP
425 Market Street, 26th Floor
San Francisco, CA 94105
(415) 777-3200
gweng@hansonbridgett.com
jthompson@hansonbridgett.com
ncook@hansonbridgett.com
nghiasi@hansonbridgett.com

**Attorneys for Plaintiff**
Blue Cross and Blue Shield Association

15